**STATE OF VERMONT**
**SUPERIOR COURT - ENVIRONMENTAL DIVISION**

| | |
|---|---|
| Secretary, Vermont Agency of Natural Resources, Plaintiff, <br><br> v. <br><br> Timothy Persons and the Trust A of Timothy Persons, Respondents | Docket No. 97-6-10 Vtec (Administrative Order enforcement proceeding) |

## Decision on the Merits

This matter came before the Court for a merits hearing after Respondents, Timothy Persons and Trust A of Timothy Persons,[1] filed a timely request for a hearing and gave notice contesting the May 24, 2010 Administrative Order ("the AO") issued against them by the Secretary of the Vermont Agency of Natural Resources ("ANR"). ANR alleged in the AO that Respondents caused excavation work to be conducted within a protected wetland and its fifty-foot buffer without first receiving authority to do so. The AO includes an ANR directive that Respondents pay certain penalties, abide by the applicable Regulations in the future, and complete other remedial measures as directed by ANR.

When the parties were unable to resolve their legal disputes voluntarily, the Court set this matter for trial. Pursuant to the parties' mutual recommendation, the Court did not conduct a site visit, having received assurances that the trial testimony, exhibits, and other evidence would provide sufficient context for the Court.

ANR was represented at the merits hearing by John Zaikowski, Esq., an ANR staff attorney. Respondent Timothy Persons and the trustee for Respondent Trust A of Timothy Persons, Allen Bacon, appeared at the merits hearing as well, together with Paul S. Gillies, Esq., who served as legal counsel for both Respondents.

At the close of evidence, the parties requested, and the Court granted, the opportunity to file post-trial memoranda. Based upon the evidence presented and admitted at the merits hearing, the Court renders the following factual and legal

---

[1] Allen Bacon provided testimony at trial and represented himself to be the sole trustee of the Trust A of Timothy J. Persons.

determinations, including determinations on ANR's request for imposition of penalties and other relief.

## Factual Findings

1. Respondent Timothy J. Persons ("Respondent Persons") or those related to him once owned a 152± acre tract of land, once used as a working farm, along the western border of Hastings Road in the Town of Lunenburg, Vermont. A portion of this property also has frontage along U.S. Route 2. At the time of Respondent Persons's ownership, the property had not been used as a farm for many years.

2. Respondent Persons or his relatives set about to subdivide this property for resale. The property was eventually subdivided into seven lots, as shown on a survey dated September 1996 and admitted at trial as Respondents' Exhibit B.

3. The northern most point of Hastings Road (a/k/a Town Highway #23), which runs north to south, intersects with U.S. Route 2, which runs west to east. Lot 1 only has frontage on U.S. Route 2. Lot 2 borders the intersection of both U.S. Route 2 and Hastings Road and has frontage on both roadways.

4. Starting at the intersection of U.S. Route 2 and Hastings Road and travelling in a northern to southern direction on Hastings Road, Lots 2 through 7 are aligned in consecutive order: Lot 2 abuts Lot 3; Lot 3 abuts Lot 4; Lot 4 abuts Lot 5A; Lot 5A abuts Lot 5; Lot 5 abuts Lot 6; and Lot 6 abuts Lot 7.

5. Lots 4, 5, and 5A are the portions of the original parcel of land that are the subject of these environmental enforcement proceedings. Lot 4 contains 10.1± acres; Lot 5 contains 59± acres; and Lot 5A contains 10.1± acres.

6. Respondent Trust A of Timothy Persons ("Respondent Trust"), with Allen Bacon serving as the sole trustee, is the owner of Lot 4. An individual who is not a party to these proceedings, Carl Jaborek, owns Lots 5 and 5A, having acquired those lots from Respondent Persons. Respondent Persons financed Mr. Jaborek's purchase of Lots 5 and 5A. At the time of trial, Mr. Jaborek was alleged to be in default on his obligations to Respondent Persons under the applicable financing agreement.

7. Lot 5A has an address of 182 Hastings Road. The original farmhouse was situated on this Lot.

8. There are wet soils on portions of Lots 4, 5, and 5A.

9. Trial testimony suggested that a water supply easement encumbers Lots 5 and 5A, for the benefit of Lots 4 and 6.

10.   A water line that once served to supply water to Lot 4 was damaged or destroyed when Mr. Jaborek, or those working on his behalf, bulldozed the former farmhouse on Lot 5A.  The water line that once supplied water to Lot 4 ran from a spring-fed well dug on Lot 5, across Lot 5A and onto Lot 4.  The well is five or more feet deep and lined with cement tiles.  The tiles reach a height of approximately three feet above the ground surface.  The tile structure is depicted in a photo admitted at trial as ANR Exhibit 8.  This pre-existing tile structure is in the foreground of Exhibit 8; the three tile structures in the background of Exhibit 8 are described in ¶ 20, below.

11.   Mr. Jaborek visited the ANR Waterbury offices sometime in 2007 to inquire about what excavation work could be done on his property on Hastings Road, Lots 5 and 5A. At that time, Mr. Jaborek was attempting to sell one or more of his lots.  He intended to do certain work on the lots, or allow others to do work on the lots, in connection with the water supply easements, and he did not want the work that he or others did on the property to interfere with his ability to sell the properties.  The credible evidence at trial indicated that it was not Mr. Jaborek's intention to contact ANR in an effort to file a complaint concerning unpermitted work in designated wetlands.

12.   Mr. Jaborek's interest in the possible impact on wetlands on or near his property was piqued when Respondent Persons made Mr. Jaborek aware that he (Respondent Persons) had been the subject of an ANR Administrative Order, issued on September 14, 1999, concerning un-permitted excavation work within a mapped Class II wetland and its fifty-foot buffer on Lot 4.  Respondent Persons had initially contested the Administrative Order, claiming as a defense that he was not aware that the land in question contained a Class II wetland and buffer.  Respondent Persons later admitted to the 1999 wetland violation, and on February 9, 2001, he entered into an Assurance of Discontinuance ("the 2001 AOD").  Based upon the 2001 AOD, this Court entered a March 2, 2001 Order approving and incorporating the terms and requirements of the 2001 AOD.  See ANR v. Persons, No. 237-12-99 Vtec (Vt. Envtl. Ct. Mar. 2, 2001) (Wright, J.).

13.   By the terms of the 2001 AOD, Respondent Persons admitted to the existence of the Class II wetland on Lot 4 and that excavation work, and the dumping of fill and

3

gravel within the wetland and its buffer, were violations of the applicable wetland protection laws and regulations. Slip op at 5–7.

14. After entering into the 2001 AOD, Respondent Persons enrolled in classes concerning wetlands delineation and septic design.

15. When Mr. Jaborek visited ANR officials in 2007, in addition to inquiring about what excavation work could be done on his property, he also wanted to learn whether the 2001 AOD had any outstanding requirements that needed to be addressed prior to his planned sale of Lots 5 and 5A.

16. As a consequence of Mr. Jaborek's 2007 inquiry (noted above in ¶¶ 11 and 15), ANR officials visited Lots 4, 5, and 5A on May 2, 2007. Their visit revealed that there had been extensive work conducted in wet areas on the Lots. The condition of the excavated areas on Lots 5 and 5A is depicted in the photos admitted as ANR Exhibits 4–8 and 15–19.

17. Lot 4 contains a Class II wetland. This is the same wetland that gave rise to the wetland violations to which Respondent Persons eventually admitted in 2001. This wetland is depicted in an overlay map drawn on an aerial map that was admitted at trial as ANR Exhibit 23. Areas with wet soils continue from the Lot 4 wetland, across Lot 5A, onto Lot 5. These wet soils are contiguous to the Class II wetland on Lot 4 and continue from the Lot 4 Class II wetland onto Lots 5 and 5A. These wet soils end in an area just south of the excavation and construction work described below; the southern border of these wet soils is depicted by a blue line on Exhibit 23.

18. During their first 2007 visit on May 2, 2007, ANR officials observed the Class II wetland on Lot 4 and contiguous wet areas flowing from that wetland and across Lots 4, 5A, and 5. They confirmed that these wet areas represented an additional wetland, contiguous to the Lot 4 Class II wetland, by their evaluation of the existing plants, soils, and hydrology in this secondary wetland. The areas that Respondent Persons excavated are within this secondary wetland.

19. Sometime prior to the ANR officials' visit on May 2, 2007, Respondent Persons and those working at his direction cut a swath of trees and excavated soils from an area approximately twelve to fourteen feet wide that runs from Lot 4, across Lot 5A, to a point on Lot 5 near where the pre-existing tile structure is located. This cleared area is wholly within the secondary wetland that is contiguous to the Class II wetland on Lot 4. The cleared area is roughly depicted on Exhibit 23 by a yellow line. Sections of

4

the cleared area are also shown in ANR Exhibits 4–8 and 15–19. As shown in these photographic Exhibits, all portions of the area Respondent Persons cleared are within this secondary wetland.

20. ANR officials again visited Lots 4, 5A, and 5 on June 21, 2007 after receiving a report that Respondent Persons was conducting further excavation work in the identified wetland. Their visit revealed that Respondent Persons had dug three additional spring-fed wells, encapsulated in concrete tiles and constructed in a fashion similar to the pre-existing tile structure described in ¶ 10, above. Respondent Persons had also brought several loads of gravel onto the well sites and deposited the gravel around the old and new tile structures. The location of the three new tile structures is depicted on Exhibit 23 by three red dots; photographs admitted at trial as ANR Exhibits 6–8, 16, 18, and 19 also show these three new tile structures. As noted in these photographic Exhibits, the soils around the three new tile structures are wet, as are the excavated areas that extend around the new wells.

21. ANR officials returned again on September 18, 2007 to inspect the past or possible new work within the secondary wetland on Lots 5 and 5A. They determined that Respondent Persons had conducted additional work by installing electrical fixtures on the three new tile structures.

22. Respondent Persons conducted the tree-cutting and excavation work within the secondary wetland so that he could replace the water line that originally supplied water to Lot 4 and provide a source of water for the other nearby Lots. His assertion that the soils were not wet when he conducted his tree-cutting and excavation work was contradicted by other credible testimony and evidence provided to the Court. The Court therefore concludes that Respondent Persons's assertions that these soils are not wet now, and were not wet at the time of his excavation work, are not credible. Respondent Persons did concede that he observed wet soils in the vicinity of his excavation work.

23. ANR Exhibits 4–8 and 15–19 accurately depict wet areas around and within the areas Respondent Persons excavated.

24. To the extent that Respondent Persons had doubts about whether the areas he planned to excavate included protected wetlands, he was aware from his previous dealings with ANR officials that those officials were able and willing to assist him in determining the extent of protected wetlands on his property and the Lots owned by

5

Respondent Trust (Lot 4) and Mr. Jaborek (Lots 5 and 5A). He chose not to seek assistance from ANR officials in determining whether the area he planned to excavate included protected wetlands.

25. From his previous dealings with ANR, his subsequent educational course work, and his experience as a general contractor, Respondent Persons knew or should have known that if he intended to conduct excavation work or other activities and uses in an area protected by state wetland protection laws and regulations, he could only receive lawful authority to do so by requesting a conditional use determination ("CUD") from ANR officials. Respondent Persons chose not to seek a CUD prior to conducting his tree-cutting and excavation activities in 2007.

26. The Class II wetland on Lot 4, its buffer, and the secondary wetland that flows contiguously from that Class II wetland onto Lots 5 and 5A, serve the following purposes, which Vermont's wetland laws and regulations seek to protect:

    a. water storage to avert flooding;
    b. protective areas for wildlife;
    c. necessary bear habitat; and
    d. erosion control.

27. The following ANR officials devoted the following time, at their established hourly rates, to responding to Respondent Persons and his unlawful tree-cutting, excavation, and well construction activities in the wet soils on Lots 4, 5 and 5A:

    a. Pardiak Monks, DEC Stormwater Engineer, devoted 10.5 hours; his time is valued at $31.00 per hour.
    b. Reginald Smith, Environmental Enforcement Officer, devoted 30.0 hours; his time is valued at $25.07 per hour.
    c. Shannon Morrison, District Wetlands Ecologist, devoted 4 ½ hours; her time is valued at $26.57 per hour.
    d. Rebecca Chalmers, District Wetlands Ecologist, devoted 25 hours; her time is valued at $21.00 per hour.

## Legal Conclusions

### I. Wetlands Designation

Respondent Persons and Respondent Trust do not appear to dispute many of the substantive allegations presented by ANR. For example, Respondent Persons admits that he and others who he employed conducted the excavation work, dredging, gravel, and other fill work on Lots 4, 5 and 5A, as well as the construction of the three new tile structures on Lot 5, for the purpose of installing wells and water lines to supply water to Lots 4 and 6. Respondent Persons also does not dispute that a

protected Class II wetland is located on Lot 4, near where he conducted these activities. This protected wetland was the subject of the prior Administrative Order, Assurance of Continuance, and Order from this Court in 2001. See ANR v. Persons, No. 237-12-99 Vtec (Vt. Envtl. Ct. Mar. 2, 2001) (Wright, J.). None of the activities Respondent Persons conducted were within the confines of the Class II wetland, as mapped by ANR, but all activities were within the secondary wetland that is contiguous to the delineated Class II wetland.

The only dispute presented by the parties is whether Respondent Persons and Allen Bacon, the trustee for Respondent Trust (the entity holding title to Lot 4), knew or should have known that the areas in which Respondent Persons conducted these activities were protected under the Vermont Wetlands Protection and Water Resources Management laws (10 V.S.A., Chapter 37) and the Vermont Wetland Rules ("the VWR").[2] For the reasons detailed below, we conclude that Respondent Persons and Allen Bacon knew or should have known that their activities were conducted within wetlands that are protected by 10 V.S.A., Chapter 37 and the VWR.

The VWR provide protection for "significant" wetlands,[3] which are defined as Class I and Class II wetlands. VWR § 2.24 (Jan. 1, 2002). The Department of Environmental Conservation maintains the Vermont Significant Wetland Inventory ("VSWI") map, on which Class I and Class II wetlands are mapped, although Class II wetlands are not limited to just those wetlands identified on the VSWI map. Rather, due to the metamorphic nature of surface and ground water, the classification of Class II wetlands also includes "all wetlands contiguous to such mapped wetlands, . . . unless determined otherwise by the [Water Resources] Board" pursuant to a successful petition for an alternate wetlands determination by ANR or a property owner. VWR § 4.2(b) (Jan. 1, 2002).

The credible evidence presented to the Court establishes that, at the time Respondent Persons and others he employed conducted the work at issue in this enforcement action, a secondary wetland existed contiguous to the Class II wetland on Lot 4. The evidence also establishes that this wetland continues to exist. This secondary wetland was and is evidenced by the plants, soils, and hydrology in this

---

[2] Since we find that Respondent Persons conducted activities in 2007 that gave rise to wetland protection violations, we conclude that the version of the VWR that were in effect from January 1, 2002 through July 31, 2010 control this case. A later version of the VWR was adopted on July 16, 2010 and went into effect on August 1, 2010.

[3] VWR § 1.1: Purpose and Authority.

area. Pursuant to VWR § 4.2(b) (Jan. 1, 2002), this secondary wetland also constitutes a Class II wetland that is protected by 10 V.S.A., Chapter 37 and the VWR. Respondent Persons, therefore, excavated within a protected wetland on Lots 4, 5 and 5A.

Respondent Persons, when confronted with the wet areas flowing from the Class II wetland on Lot 4 onto the portions of Lots 5 and 5A that he wished to excavate, chose not to seek guidance from ANR officials and did not petition for a new wetlands determination, as is suggested and authorized under VWR Sections 7 and 8. Rather, he excavated for his water lines and spring-fed wells in an area he knew to be wet.

Respondent Persons knew the procedures to petition for a wetlands re-determination, to apply for a conditional use determination to permit activities within wetlands, and to request assistance from ANR officials prior to conducting excavation activities. His choice not to complete any of these actions, despite his knowledge that the area in which he wanted to complete excavation work contained wet soils, reinforces this Court's determination that he knew that he was excavating and constructing wells in a protected wetland but chose to ignore the regulations established to protect wetlands and the important functions that they serve.

Based upon this compelling evidence, we can only conclude that Respondent Persons knew or should have known that he was conducting unlawful activities within a protected wetland, that is, a wetland deemed significant under the VWR. The trustee for Respondent Trust was equally culpable, due to his knowledge of the area and the Trust's ownership interest in Lot 4.

## II. **Penalty Assessment**

When this Court determines that an environmental violation alleged by ANR in an administrative order has occurred, we are required to "determine anew the amount of a penalty" that should be assessed against the respondent who sought to challenge the ANR order. 10 V.S.A. § 8012(b)(1), (4). We therefore review the credible facts presented here to determine an appropriate penalty assessment, pursuant to 10 V.S.A. § 8010(b)(1)–(8).[4]

---

[4] ANR notes that the version of 10 V.S.A. § 8010(b)(1)–(8) in effect at the time of Respondent Persons's violations included a provision concerning a recapture of the economic benefit of the violation. However, because ANR has chosen not to seek such a recapture, the authority for which is now codified in 10 V.S.A. § 8010(c)(2), we do not consider the issue of recapture.

8

**Subsection (1)**:  Respondent Persons's disregard for the wetland protection rules had and continues to have potential impacts on public health, safety, welfare, and the environment, given the disruption of the important functions that significant wetlands serve.  To encourage Respondent Persons to remedy his wetland encroachments, we impose a penalty of $3,000.  We conclude that such a penalty is warranted here, given that Respondent Persons has refused to take corrective measures after being directed to do so by ANR officials.  However, we decline to impose a more significant penalty under this subsection, since actual impacts were not demonstrated by the evidence presented at trial.

**Subsection (2)**:  There was no evidence presented of mitigating factors favoring Respondent Persons or disfavoring the timeliness of ANR's action.  We therefore assess no penalty or credit in light of this factor.

**Subsection (3)**:  The credible evidence shows that Respondent Persons had knowledge about assessing wetlands and about the procedures to be followed when he was confronted with a protected wetland in an area he wished to excavate.  The fact that he chose to go forward with excavating within the protected wetland, including through constructing three new spring-fed wells, even in light of the abundant evidence of wet soils, leads us to conclude that Respondent Persons knew of the wetland and its significance but chose to pursue his personal interests instead of the public interest.  For these reasons, we assess an additional penalty of $3,000.

**Subsection (4)**:  The record presented shows that Respondent Persons has previously violated wetland protection regulations.  This past history of non-compliance provided Respondent Persons with knowledge of the protected wetlands on his property and the property owned in the name of his Trust.  Respondent Persons has failed to take any steps, over a span of the four years since ANR officials first approached him about his most recent wetland encroachment, to comply with the wetland protection rules or to mitigate his encroachment into the protected wetland.  For these actions, we impose a fine of $4,000.

**Subsection (5)**:  This subsection has been repealed.

**Subsection (6)**:  In viewing the importance of establishing a penalty that will have a deterrent effect upon Respondent Persons, we note both the apparent failure of the prior proceedings to infuse Respondent Persons with a respect for protected wetlands as well as his refusal to acknowledge his most recent transgressions and

9

lack of any effort to correct those transgressions. We therefore impose an additional penalty of $2,000, in the hope and expectation that this additional penalty will provide some deterrent for Respondent Persons if and when he is again faced with a desire to excavate in a wetland.

**Subsection (7)**: The value of the time that all ANR officials committed to responding to Respondent Persons's wetland violations, including prosecution of this current violation, totals just under $1,722. We direct Respondent Persons to reimburse these costs as an additional penalty for his violations.

**Subsection (8)**: We are uncertain how long Respondent Persons's encroachment into the protected wetland existed before disclosure to ANR, although the photographic Exhibits appear to show freshly turned soils that have not yet settled or grassed over. At the time of trial, the credible evidence revealed that Respondent Persons had not taken a single step to remedy his encroachment into the protected wetland. We therefore impose an additional penalty of $500 for the time Respondent Persons allowed these wetland encroachments to go unaddressed. Our assessment here would be more significant, but, in lieu of an additional penalty, we **AFFIRM** all the injunctive remedies imposed by the ANR Secretary in her AO.

## Conclusion

For the reasons stated above, we conclude that Respondents Timothy J. Persons and Trust A of Timothy Persons, jointly and severally, shall be liable for a total penalty in these proceedings of **$14,222**. We further **AFFIRM** the injunctive directives imposed against Respondents Persons and Trust A of Timothy Persons, jointly and severally, that are contained on pages 2–3, ¶¶ B through E in the Administrative Order of the ANR Secretary, dated May 24, 2010. All deadlines in ¶¶ B through E shall now run from the date that Respondent Persons, through his attorney, receives this Merits Decision.

## Rights of Appeal (10 V.S.A. § 8012(c)(4) and (5))

**WARNING:** This Decision and the accompanying Judgment Order will become final if no appeal is requested within 10 days of the date this Decision is received. All parties to this proceeding have a right to appeal this Decision and Judgment Order. The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to superseding provisions in the Vermont Rules for

Environmental Court Proceedings (V.R.E.C.P.) 4(d)(6). Within 10 days of the receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of the Environmental Division of the Vermont Superior Court, together with the applicable filing fee. Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276. An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court. 10 V.S.A. § 8013(d). A party may petition the Supreme Court for a stay under the provisions of the Vermont Rules of Civil Procedure (V.R.C.P.) 62 and V.R.A.P. 8.

A Judgment Order accompanies this Decision. This concludes the current proceedings before this Court in this enforcement action.

Done at Newfane, Vermont this 1st day of August, 2012.

_____
Thomas S. Durkin, Environmental Judge